**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DANIEL KNOX (d/b/a Universal Crown Real Estate LLC)** | ) ) | |
| Plaintiff, | ) ) | No. 09-CV-4672 |
| | ) | Judge: |
| **WASHINGTON MUTUAL BANK** | ) ) | |
| Defendant. | ) | Magistrate Judge: |

**JURY DEMAND**

**PLAINTIFF'S VERIFIED COMPLAINT**

Now Comes Complainant, **DANIEL KNOX,** by and through his attorneys, the Law Office of David E. Neely & Associates, and files this complaint against **WASHINGTON MUTUAL BANK** and states:

**INTRODUCTORY PARAGRAPH**

This is an action to retrieve Ninety Five Thousand Dollars ($95,000.00) deposited in defendant bank and subsequently misappropriated by defendant's employee.

**JURISDICTION AND VENUE**

The jurisdiction of this court is under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq.), Title 28 U.S.C.A., Rule 23 of the Federal Rules of Civil Procedure. This Court has jurisdiction over such claims pursuant to 28 U.S.C. Sections 1331 and 1343(4). This Court has jurisdiction over related state claims under the doctrine of pendent jurisdiction pursuant to 28 U.S.C. 1367. Venue is proper in the Norther District of Illinois since the conduct and action complained of occurred in this district.

## THE PARTIES

1. Plaintiff resides in the City of Chicago, County of Cook, State of Illinois and is a customer and account holder with WASHINGTON MUTUAL BANK;

2. Washington Mutual, Inc. (abbreviated to WaMu) was a savings bank holding company and the former owner of Washington Mutual Bank, which was the United States' largest savings and loan association.

3. On September 25, 2008, the United States Office of Thrift Supervision (OTS) seized Washington Mutual Bank from Washington Mutual, Inc. and placed it into the receivership of the Federal Deposit Insurance Corporation (FDIC). The OTS took the action due to the withdrawal of $16.4 billion in deposits, during a 10-day bank run (amounting to 9% of the deposits it had held on June 30, 2008). The FDIC sold the banking subsidiaries (minus unsecured debt or equity claims) to JPMorgan Chase for $1.9 billion, which re-opened the bank the next day. The holding company, Washington Mutual, Inc. was left with $33 billion assets, and $8 billion debt, after being stripped of its banking subsidiary by the FDIC. The next day, September 26, Washington Mutual, Inc. filed for Chapter 11 voluntary bankruptcy in Delaware, where it is incorporated.

4. Washington Mutual Bank's closure and receivership is the largest bank failure in American financial history. Before the receivership action, it was the sixth-largest bank in the United States. According to Washington Mutual Inc.'s 2007 SEC filing, the holding company held assets valued at $327.9 billion.

5. On 20 March 2009, Washington Mutual Inc. filed suit against the FDIC in the United States District Court for the District of Columbia, seeking damages of approximately $13 Billion for what they claim to be an unjustified seizure and an extremely low sale price to JPMorgan Chase. JPMorgan Chase promptly filed a counterclaim in the Federal Bankruptcy Court in Delaware, where the Washington Mutual bankruptcy proceedings had been continuing since the

> Office of Thrift Supervision's seizure of the holding company's bank subsidiaries.

## RELEVANT FACTS

6. Based upon information and belief, Washington Mutual Bank (Hereinafter referred to as WAMU) is a federally insured and regulated bank.

7. Plaintiff is a customer of WAMU and maintains WAMU corporate business account No. 03137477651 in the name of Universal Crown Real Estate LLC.

8. On or about March 5, 2007, Plaintiff made an electronic deposit into business account No. 03137477651 in the amount of $95,000.00. (**Plaintiff's Exhibit 1.**)

9. Based upon information and belief, on or about March 7, 2007, an employee of WAMU made an unauthorized withdrawal from Plaintiff's account No. 03137477651 in the amount of NINETY THOUSAND DOLLARS ($90,000.00) (**Plaintiff's Exhibit 2**.).

10. That Plaintiff never received bank statements reflecting these unauthorized withdrawals.

11. Plaintiff made mortgage payments from account No. 03137477651 on May 11, 2007 in the amount of $1,905.62, on June 10, 2007 in the amount of $1,905.62 and on August 15, 2007 in the amount of $1,932.77 and was never alerted to the unauthorized withdrawals. (**Plaintiff's Exhibit 4**.).

12. Plaintiff did not receive any bank statements from WAMU after March 2007.

13. Based upon information and belief, on or about May 2, 2008, an employee of WAMU made an unauthorized withdrawal from Plaintiff's account No. 03137477651 in the amount of ONE THOUSAND SIX HUNDRED FIFTY DOLLAR ($1,650.00) (**Plaintiff's Exhibit 3**.).

14. Plaintiff was alerted to this unauthorized withdrawal and immediately made numerous verbal complaints to WAMU.

15. On or about October 16, 2008, WAMU sent Plaintiff a letter regarding the unauthorized withdrawal in the amount of $1,650.00, but never acknowledged the unauthorized withdrawal in the amount of $90,000.00. (**Plaintiff's Exhibit 5**.).

16. That WAMU made no further written communication with Plaintiff throughout the remainder of 2008, despite Plaintiff's repeated complaints.

17. On or about June 17, 2009, WAMU requested that Plaintiff file a written complaint, which he did.

18. Two days after WAMU required Plaintiff to file a written complaint or on or about June 19, 2009, WAMU declined Plaintiff's claim. (**Plaintiff's Exhibit 6**)).

19. The reason stated by WAMU for declining Plaintiff's claim is that Plaintiff violated the Uniform Commercial Code by failing to exercise reasonable care and promptly notify the Bank.

20. That the stated reason set forth by WAMU for declining Plaintiff's claim is a pretext for fraud.

21. That based upon information and belief, WAMU discovered in 2008 that the same employee who opened Plaintiff's account and serviced the account also misappropriated Plaintiff's funds.

22. Based upon information and belief, WAMU discharged its employee in May 2008 for misappropriating Plaintiff's funds.

23. That based upon information and belief, the name of the WAMU employee that was discharged for misappropriating Plaintiff's funds is Biron Dotson.

24. Plaintiff is the only authorized signatory on his corporate account.

25. As a direct and approximate cause of defendant's misappropriation of Plaintiff's business account, Plaintiff has been damaged in the amount of $91,650.00, plus loss interest, costs and attorneys fees.

26. That at all times Plaintiff exercised reasonable care and promptly notified WAMU upon discovery of the misappropriation and fraud. WAMU failed to

send or make available to Plaintiff as a customer a statement of account showing the misappropriated electronic transfers.
27. Defendant failed to provide Plaintiff with information in a statement of account sufficient to allow the Plaintiff to reasonably identify the items misappropriated.
28. The money misappropriated from Plaintiff's account was done so in bad faith.
29. Defendant failed to exercise ordinary care in protecting Plaintiff's money from being misappropriated by its employees.
30. Defendant's failure substantially contributed to Plaintiff's loss.
31. WAMU's subsequent investigation into Plaintiff's complaint (or lack thereof) is the basis for this action.
32. WAMU failed to keep Plaintiff informed of its investigation and intentionally and fraudulently made Plaintiff wait more than one year before requiring Plaintiff to make a written complaint.
33. WAMU required Plaintiff to file a written complaint more than one year after its investigation revealed misappropriation by its employee solely so it could reject plaintiff's claim in writing within the 10 day period required by law.
34. That WAMU requirement that Plaintiff file a written complaint two years after the misappropriation, one year after its investigation was complete and one year after it terminated Brion Dotson for misappropriation is mere pretext for fraudulent action on its part.

## COUNT I.
### (ELECTRONIC FUNDS TRANSFER ACT ("EFTA"), 15 U.S.C. § 1693 et seq.)

35. Plaintiff realleges paragraph 1 through 34 as paragraph 35 of Count I.
36. The EFTA includes a variety of directives from Congress on how financial institutions should handle alleged errors stemming from the electronic transfer of funds. See 15 U.S.C. § 1693f.

37. After WAMU was notified of the misappropriation by Plaintiff in May 2008 the institution investigated the alleged error, determined that the error had occurred as a result of employee misappropriation and failed to report or mail the results of such investigation and determination to Plaintiff within ten business days in violation of § 1693f(a)(3).

38. WAMU failed to credit Plaintiff's account, with interest, within one business day of making that determination in violation of § 1693f(b).

39. Even if WAMU was unable to complete its investigation within ten business days after receiving notice of Plaintiff's 2008 verbal complaint, it failed to "provisionally recredit Plaintiff's account for the amount alleged to be in error, . . ., including interest where applicable, pending the conclusion of its investigation in violation of § 1693f(c).

40. The Bank's 2009 letter explaining its findings was not sent to Plaintiff within three days after conclusion of its investigation, but rather is a clever attempt to fraudulently circumvent its fruad.

41. The Bank engaged in knowing or willful misconduct.

42. That one or more employees of defendant's bank was involved in a sophisticated scam of some sort which caused the misappropriation and the stop on Plaintiff's receiving bank statements. unauthorized disclosure of Plaintiff's bank account information.

43. The Bank violated the Illinois Consumer Fraud and Deceptive Practices Act.

44. The Bank's failure to conduct an adequate investigation into the alleged unauthorized transactions constitutes an unfair practice that violates the ICFA and "offends public policy, is immoral, unethical, oppressive and unscrupulous, and substantially harms consumers.

45. The Bank's conduct was "willful, wanton and in reckless disregard of the rights of others," entitling Plaintiff to punitive damages.

46. The Bank failed to provide Plaintiff with the documents it relied upon in making this determination.

47. Plaintiff is entitled to an award of treble damages for violations of these provisions.
48. Treble damages are available if the institution fails to provisionally recredit a consumer's account when the investigation took longer than ten business days, and the institution: (A) "did not make a good faith investigation of the alleged error, or (B) did not have a reasonable basis for believing that the consumer's account was not in error." Id. § 1693f(e)(1).
49. Treble damages are also available to a consumer when the financial institution "knowingly and willfully conclude[s] that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation." Id. § 1693f(e)(2).
50. Plaintiff is entitled to treble damages under 15 U.S.C. § 1693f(e)(2) because the Bank "knowingly and willfully decided that the plaintiff's account was not in error when such a conclusion could not reasonably have been drawn from the evidence available to the Bank at the time of its investigation.
51. Plaintiff is entitled to treble damages in the amount of $274,950.00.
52. Plaintiff is entitled to the amount of $91,650,00, which reflects the amount that was misappropriated from his account.
53. Plaintiff is entitled to punitive damages

**WHEREFORE**, for all the reasons stated herein, Plaintiff seeks judgment in his favor and against defendant in the amounts reflected herein and for all other just and proper relief.

### COUNT II.
### ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICE ACT ("ICFA"), 815 ILCS 505/1 et seq.

54. Plaintiff realleges paragraph 1 through 48 as paragraph 49 of Count II.
55. In order to state claim under the ICFA, a plaintiff must allege: "(1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the

deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." Connick v. Suzuki Motor Co., Ltd., 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593, 221 Ill. Dec. 389 (1996) (citing Siegel v. Levy Org. Dev. Co., 153 Ill. 2d 534, 542, 607 N.E.2d 194, 180 Ill. Dec. 300 (1992)). A plaintiff may allege conduct that is unfair but not deceptive. See Saunders v. Mich. Ave. Nat'l Bank, 278 Ill. App. 3d 307, 313, 662 N.E.2d 602, 608, 214 Ill. Dec. 1036 (1st Dist. 1996).

56. The misappropriation of money from Plaintiff's account by defendant was a deceptive act or practice.
57. Defendant intended that Plaintiff rely on its deception.
58. The deception occurred in the course of conduct involving trade and commerce.
59. Failure to report the results of WAMU investigation in 2008 constitutes a deceptive practice.
60. Termination of WAMU's employee for misappropriating Plaintiff's funds and failing to notify Plaintiff is a deceptive practice.
61. Failure to recredit or provisionally recredit Plaintiff's account is a deceptive practice.
62. Failure to provide Plaintiff with timely bank statements is a deceptive practice.
63. Failure to have Plaintiff fill out a complaint recredit Plaintiff's account, making Plaintiff wait for more than a year before requesting that he fill out a complaint form and denying Plaintiff's claim two days after he was required to file the complaint form.
64. Defendant's failure to conduct an adequate investigation into plaintiff's claim is an unfair practice in violation of the Illinois Consumer Fraud Act.
65. Plaintiff has properly identified the alleged unauthorized transactions; explains when and how he informed the Bank of his claim; sets forth his subsequent communications with the Bank regarding the alleged unauthorized transactions and the content of those communications; and notes the actions the Bank declined to take in its investigation of the alleged unauthorized transactions.

66. "'A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.'" Robinson, 201 Ill. 2d at 418, 775 N.E.2d at 961 (quoting Cheshire Mortg. Serv., Inc. v. Montes, 223 Conn. 80, 106, 612 A.2d 1130, 1143 (1992)).

67. Defendant's actions and practices offend public policy as reflected in statutes, the common law, or otherwise is within at least the penumbra of some common-law, statutory, or other established concept of unfairness." Sperry & Hutchinson Co., 405 U.S. at 244 n.5; see also Griffin v. Universal Cas. Co., 274 Ill. App. 3d 1056, 1069, 654 N.E.2d 694, 703, 211 Ill. Dec. 232 (1st. Dist. 1995) (citations omitted) (applying standard set forth in Sperry & Hutchinson Co.).

68. Defendant's practice is "unfair" within the meaning of ICFA because the practice at issue is "immoral, unethical, oppressive or unscrupulous" or that it "causes a substantial injury to consumers." Robinson, 201 Ill. 2d at 417, 775 N.E.2d at 961 (citation omitted).

69. Defendant's conduct is sufficient to raise an inference that the conduct was oppressive.

70. Defendant's practice causes substantial injury to consumers.

71. "A practice causes substantial injury to consumers if it causes significant harm to the Plaintiff and has the potential to cause injury to a large number of consumers." Garrett v. RentGrow, Inc., No. 04 C 8309, 2005 U.S. Dist. LEXIS 13210, 2005 WL 1563162, *4 (N.D. Ill. July 1, 2005) (citation omitted).

72. WAMU has multiple branches in Illinois and this court can reasonably infer that its large consumer base may be at risk of being subjected to cursory and inadequate investigations of claims of unauthorized transactions.

73. The Bank through one or more of its employees is liable for punitive damages because the specific facts suggest that WAMU engaged in conduct that was 'willful, wanton and in reckless disregard of the rights of others' that would allow for the imposition of punitive damages in this case."

74. Plaintiff is entitled to prejudgment interest.
75. The public is invited to use the bank's conveniences as places of deposit and it holds itself out as trustworthy for such purposes.
76. Plaintiff placed his money in the bank's custody with the expectation that the bank would protect his money.
77. The bank treated Plaintiff's account blindly and disbursed his proceeds according to the instructions of its employees, not Plaintiff.
78. The Uniform Commercial Code provisions governing the relationship between a bank and its customer recognize and embrace the duty of care that the bank owes its depositors.
79. Although the Code permits contracting parties to vary the effect of those provisions by agreement, it expressly disallows any term which purports to disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure. 810 Ill. Comp. Stat. 5/4-103(a).
80. Illinois courts deem a variety of written instruments sufficient to support an award of interest pursuant to § 2 of the Illinois Interest Act, codified at 815 Ill. Comp. Stat. 205/2, among them contracts.
81. Illinois courts often characterize the relationship between a bank and its depositor as that of creditor and debtor. The deposit agreement between a bank and its customer therefore can serve as an "instrument of writing" for purposes of the statute.
82. Pursuant to the terms and conditions of the agreement governing operating account at the Bank, only authorized customers can withdraw or transfer funds from their account.
83. That Plaintiff is entitled to attorneys fees.

**WHEREFORE**, for all the reasons stated herein, Plaintiff seeks judgment in his favor and against defendant in the amounts reflected herein and costs and attorneys fees and for all other just and proper relief.

## CERTIFICATION

I, <u>DANIEL KNOX</u>, hereby certify that I have read the allegations in the complaint and certify that the allegations herein are true and correct to the best of my knowledge and that other facts are best upon information and belief.

s/Daniel Knox

## JURY DEMAND

Plaintiffs demand a jury trial on the issues herein.

s/David E. Neely
David E. Neely & ASSOCIATES P.C.
8401 So. Luella
Chicago, Il. 60617
(312) 315-8241
deneely1@prodigy.net